UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO SALCIDO-CRUZ, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 02 C 8951 |
| UNITED STATES OF AMERICA, | ) Judge Rebecca R. Pallmeyer |
| Respondent. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

On May 20, 2002, Petitioner Mario Salcido-Cruz,[1] a native and citizen of Mexico legally residing in the United States, pleaded guilty to a one-count indictment charging him with possession, with intent to deliver, approximately five kilograms of cocaine. On September 10, 2002, this court sentenced Petitioner to 76 months imprisonment to be followed by five years supervised release. He did not appeal his conviction or sentence. Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2255, challenging his sentence on grounds of ineffective assistance of counsel. Specifically, he claims that: (1) his plea agreement was coerced/involuntary insofar as it was based on trial counsel's promise that he would not be sentenced to more than 60 months imprisonment; (2) trial counsel was ineffective in failing to move for certain downward departures under the federal sentencing guidelines; (3) trial counsel was ineffective in failing to object to the content of the pre-sentence report; and (4) trial counsel was ineffective in failing to research and present an "unconsciousness defense." For the reasons discussed below, the petition is denied.

---

[1] There appears to be some confusion regarding Petitioner's last name. In his habeas petition, Petitioner states his name as Salcido-Cruz. In earlier documents, however, he stated his name as Cruz-Salcido. (Defendant's Motion for Downward Departure, Respondent's Ex. 4.) The government employs the latter order. Nevertheless, the court will defer to Petitioner.

## FACTUAL BACKGROUND

Neither Petitioner nor the government disputes the facts surrounding the offense committed in this case as set out in the plea agreement. In that agreement, Petitioner admitted that, beginning on March 2, 2002, he had several telephone conversations with a confidential source ("CS") in which he asked the CS whether he wanted to purchase kilograms of cocaine. (Plea Agreement, Respondent's Ex. 3, at 2.) The CS replied affirmatively, and on March 5, Petitioner telephoned the CS and arranged to meet him in a restaurant parking lot in Franklin Park, a suburb of Chicago. (*Id.* at 2-3.) At this meeting, Petitioner told the CS that the cocaine was available and the CS agreed to purchase five kilograms. (*Id.* at 3.)

On March 7, 2002, Petitioner instructed the CS, by telephone, to meet him at 3:30 p.m. at the Home Depot store in Cicero, Illinois, to consummate the transaction. (*Id.*) The CS met Petitioner inside the store, where Petitioner purchased a garbage can. The two men left the store and proceeded to Petitioner's vehicle, where Petitioner removed a cardboard box from his vehicle, placed it inside the garbage can, and placed the garbage can inside of the CS's vehicle. DEA agents immediately arrested Petitioner and recovered the garbage can from the CS's vehicle. Inside the can was a "Toastmaster Coffee" box containing five brick-shaped brown packages of cocaine, a total of 4,997 grams. (*Id.*)

On May 5, 2002, Petitioner signed a written plea agreement. In addition to the facts outlined above, the agreement expressly states that the offense to which Petitioner was pleading guilty carried a maximum term of 40 years imprisonment, as well as a statutory minimum of five years imprisonment. (Plea Agreement, at 5.) The agreement further states that the parties "are free to recommend that the Court impose a sentence at any point within the applicable guideline range or the mandatory minimum penalty, whichever is higher." (*Id.* at 7.) The agreement also contained language that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead

guilty." (*Id.*)

On May 20, 2002, this court held a Rule 11 hearing at which Petitioner acknowledged that he had had adequate time to discuss the terms of the plea agreement with counsel. (Transcript of May 20, 2002 Hearing, Respondent's Ex. 1, at 5.) Petitioner further acknowledged that he understood his rights at trial and that, by pleading guilty, he would waive those rights. (*Id.* at 5-9.) Regarding the agreement itself, Petitioner recognized that the plea did not contain any agreement regarding his specific sentence or the amount of time he would serve, and that the court would make the final determination as to his sentence. (*Id.* at 14-15.) Finally, Petitioner expressly acknowledged that he had not been coerced, that he had received no threats or promises, and that no agreement had been reached regarding his sentence. (*Id.* at 13.)

At the September 10, 2002 sentencing hearing, Petitioner, against the advice of his attorney, moved for a downward departure under the § 5K2.0 of the federal sentencing guidelines on the grounds that he is a deportable alien. (Affidavit of Luis Galvan, Respondent's Ex. 6, hereinafter Galvan Affidavit, at 2.) Specifically, he claimed that such a departure was warranted, pursuant to *United States v. Farouil*, 124 F.3d 838 (7th Cir. 1997), because his status as a deportable alien rendered him ineligible for access to certain programs and exposed him to a risk of placement in a higher security facility. (Defendant's Motion for Downward Departure, Respondent's Ex. 4, at 2.) Petitioner's trial counsel refused to bring the motion because he believed it was meritless under current Seventh Circuit law. (Galvan Affidavit, at 2.) The government opposed the motion. Ultimately, this court acknowledged its discretion to grant such a motion but found that Petitioner's circumstances did not warrant such a departure. (Transcript of Sept. 10, 2002 Sentencing Hearing, Respondent's Ex. 2, at 5.)

After denying Petitioner's motion for downward departure, the court examined the particular circumstances of the offense committed, as set forth in the pre-sentence report. Petitioner, through defense counsel, was asked if he wished to make any corrections to the report, but neither

3

Petitioner or counsel objected to the veracity of the report. (*Id.* at 2.) Faced with a sentencing range (adjusted offense level 37, criminal history category I) of 70 to 87 months, this court, in light of competing factors such as Petitioner's lack of criminal record and the large amount of drugs involved, split the difference and sentenced Petitioner to 76-months imprisonment, to be followed by five years of supervised release. (*Id.* at 9.) The court and the parties understood that Petitioner would be deported to Mexico following his release from custody. (*Id.* at 10.)

Petitioner did not directly appeal his sentence or conviction. On December 10, 2002, Petitioner filed the present writ of habeas corpus.

## DISCUSSION

Section 2255 permits a prisoner to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255. Such collateral relief is available where there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994), *quoting Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). Where the court finds that there has been such a "fundamental defect" resulting in a "complete miscarriage of justice," *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998), *quoting Davis v. United States*, 417 U.S. 333, 346 (1974), the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

Before a district court will review a claim on its merits, the issue must have "been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). A section 2255 motion is not a substitute for a direct appeal, and thus the "failure to raise constitutional challenges to a conviction on direct appeal bars a petitioner from raising the same issue in a section 2255 proceeding--absent a showing of good cause for and prejudice from the

4

failure to appeal." *Id.*, citing *Norris v. United States*, 687 F.2d 899, 903-04 (7th Cir. 1982). Nevertheless, the Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see also Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002), citing *McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996) ("it is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually . . . involve evidence outside the record."). This court therefore considers Petitioner's ineffective assistance of counsel claims despite the fact that they were not raised on direct appeal.

I.  **Ineffective Assistance of Counsel Claims**

Petitioner bears a heavy burden in attempting to demonstrate that his trial counsel was ineffective. In order to prevail on an ineffective assistance of counsel claim, a petition must show (1) that his attorney's representation fell below an objective standard of reasonableness (performance prong), *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong). *Id.* at 694. Regarding the performance prong, a petitioner "must identify the specific acts or omissions that form the basis for his claim of ineffective assistance." *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988), citing *Strickland*, 466 U.S. at 690. The court then considers "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 764. With regard to the prejudice prong, a petitioner must show a probability of a different result "sufficient to undermine confidence in the outcome [of the trial]." *Id.* In the sentencing context, this requires that a habeas petitioner show "a reasonable probability that he received additional prison time because of counsel's error." *United States v. Ruzzano*, 247 F.3d 688, 696-97 (7th Cir. 2001).

5

## A. Coercion

Petitioner's first claim is that his plea agreement was the product of coercion. Petitioner's brief does not identify the manner in which he was coerced, nor the specific circumstances which he believes rendered his plea agreement involuntary. He does allege, at a later point in his brief, that his trial counsel promised that he would be sentenced to no more than 60 months under the plea agreement. (§ 2255 petition, at 6.) The court will presume that this allegation is the basis for Petitioner's coercion argument.

Unfortunately for Petitioner, his assertion that his trial counsel promised that his sentenced would be limited to 60 months imprisonment flies in the face of the express language of the plea agreement as well as his own statements made during the Rule 11 colloquy.[2] The plea agreement, signed by Petitioner on May 5, 2002, expressly stated that the count to which Petitioner pleaded guilty carried a maximum term of 40 years imprisonment, as well as a statutory minimum of five years imprisonment. (Plea Agreement, at 5.) The agreement further states that the parties "are free to recommend that the Court impose a sentence at any point within the applicable guideline range or the mandatory minimum penalty, whichever is higher." (*Id.* at 7.) In the agreement, Petitioner also acknowledged that no threats, promises, or representations had been reached other than those set forth in the plea agreement itself. (*Id.*) In addition, during the May 20, 2002 hearing, Petitioner conceded, under oath, that there was no agreement regarding the amount of time he would serve. (Transcript of May 20, 2002 Hearing, Respondent's Ex. 1, at 14.) He also stated that no one had made any promises regarding his sentence and that he understood that the court would make the final decision regarding his sentence. (*Id.* at 15.) After conducting a thorough Rule 11

---

[2] Federal Rule of Criminal Procedure 11 provides that before accepting a guilty plea, the court must place the defendant under oath and inform him of his various rights being given up and the possible penalties of pleading guilty, and to ensure that the defendant is entering into the plea agreement is voluntary and not entered into on the basis of force, threats, or promises outside of the plea agreement. FED. R. CRIM. P. 11(b).

6

colloquy, this court concluded that Petitioner's plea agreement was voluntary and entered with full knowledge of his rights and the possible penalties. (*Id.* at 17.) In addition to this record, Petitioner's trial counsel Luis Galvan has presented an affidavit stating that no promises were made to Petitioner as to the specific term of imprisonment. (Galvan Affidavit, at 1.) Petitioner now urges that his statements during the Rule 11 hearing were false, and that he entered into his plea based on his attorney's promise that he would be sentenced to no more than 60 months in custody.

A prisoner claiming that his guilty plea was not voluntary, despite his assertions at the Rule 11 hearing, "faces a heavy burden of persuasion." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). The answers given during a Rule 11 hearing are accorded a "presumption of verity," *id.*, quoting *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986), which is overcome only if the defendant satisfies that heavy burden. *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995), quoting *United States v. Malave*, 22 F.3d 145, 148 (7th Cir. 1994). "Moreover, the district court's finding with respect to whether the defendant has met that burden will be accorded great weight and will not be reversed unless clearly erroneous." *Ellison*, 835 F.2d at 693, citing *United States v. Suter*, 755 F.2d 523, 525 (7th Cir. 1985); *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir. 1977).

Petitioner has not met this burden. He has not provided any evidence, nor even an affidavit, or explanation of the nature or the circumstances of any promises purportedly made to him. *Paters v. United States*, 159 F.3d 1043, 1051 (7th Cir. 1998) (a § 2255 petitioner "must be accompanied by a *detailed and specific affidavit* which shows that the petitioner had *actual proof of the allegations* going beyond *mere unsupported assertions*") (emphasis in original) (internal quotations omitted). Unsubstantiated allegations are entirely insufficient to cast doubt on the veracity of a Rule 11 colloquy and to overturn a plea agreement. *Ellison*, 835 F.2d at 693 ("We will not force an attitude of skepticism on district judges which would eliminate the presumption of truthfulness expected from responses given under oath. Nor will we discount the use of the record of a Rule 11

plea proceeding in a defendant's effort to withdraw his plea."); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) ("'Mere unsupported allegations cannot sustain a petitioner's request for a hearing'."); *Purifoy v. United States*, No. 02 C 50368, 2002 WL 31748615, *1 (N.D. Ill. Dec. 03, 2002) (petitioner's "mere self-serving and unsupported assertions" regarding promise outside of plea agreement not sufficient to prevail on § 2255 petition); *United States v. Doby*, 652 F. Supp. 335, 339 (N.D. Ind. 1987) (rejecting § 2255 claim that plea was contingent on promise that sentence would run concurrently when plea agreement and Rule 11 hearing were clear that sentences could run consecutively). In this case, the language of the plea agreement and the record of the Rule 11 hearing make clear that Petitioner was well informed that he could, pursuant to the plea agreement, be sentenced to a period of imprisonment in excess of sixty months. Accordingly, his petition for relief on this ground is denied.

### B. Failure to Move for Downward Departures

Petitioner next urges that his trial counsel was ineffective for failing to move for certain downward departures under the federal sentencing guidelines.

#### 1. Safety Valve

First, Petitioner urges that Mr. Galvan should have moved for a three-point downward departure under the sentencing guidelines on the grounds that he was a first time offender, did not use violence, possess a firearm, or cause serious bodily injury during the commission of the crime. (§ 2255 Petition, at 3-4.) In addition, Petitioner claims that Mr. Galvan improperly conceded that he was a drug supplier. (*Id.*) Petitioner has not identified any specific section of the sentencing guidelines, but the court will assume that he is referring to the "safety valve" reduction in § 5C1.2. Under this section, a defendant may avoid facing the otherwise applicable statutory mandatory minimum sentence and be sentenced within the guideline range where: (1) the defendant does not have more than one prior criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon during the offense; (3) the

8

offense did not result in death or serious bodily injury; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) the defendant has truthfully provided to the government all information and evidence concerning the offense. U.S.S.G. § 5C1.2.

Although the government has joined the issue, the court concludes that the "safety valve" provisions are unavailable to Petitioner here. The safety valve enables the court to ignore the mandatory minimum sentence and sentence *within the guideline range* under certain circumstances. The sentencing range for Salcido-Cruz was 70-87 months – in other words, *higher* than the 60-month mandatory minimum for the crimes to which he was pleading guilty. As a result, even if he had been otherwise eligible under § 5C1.2, any motion brought to apply the safety valve should be denied.[3]

As discussed above, in order to succeed on a claim of ineffective assistance of counsel, Petitioner must show that Mr. Galvan's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for his errors, the result of the proceeding would have been different. Failure to pursue arguments that "are clearly destined to be unsuccessful" does not constitute ineffective assistance of counsel. *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991), citing *United States v. Madewell*, 917 F.2d 301, 305 (7th Cir. 1990).

---

[3] In any event, Petitioner did not meet the criteria for application of the safety valve. As Mr. Galvan explained in his affidavit, he did not move for application of the safety valve because, although he confessed his own involvement, Petitioner had not been completely truthful and forthcoming regarding the involvement of other individuals in the offense. (Galvan Affidavit, at 2.) This court itself noted that Petitioner failed to provide evidence concerning his drug supplier or others in the "chain of distribution." (Transcript of Sept. 10, 2002 Sentencing Hearing, Respondent's Ex. 2, at 9.) As a result of Petitioner's refusal to provide such information, Mr. Galvan correctly concluded that Petition was not eligible for the "safety valve" reduction pursuant to § 5C1.2. In doing so, Mr. Galvan at no point conceded, as Petitioner alleges, that Petitioner was a supplier. (Galvan Affidavit, at 2.)

### 2. Deportable Alien Status

Petitioner also argues that trial counsel was ineffective for refusing to move for downward departure based upon his status as a deportable alien. Mr. Galvan refused to make such a motion on Petitioner's behalf during his sentencing based upon his belief that no such departure was merited in Petitioner's case. Against Mr. Galvan's advice, Petitioner himself filed a motion for a downward departure based on his alien status. This court denied the motion.

The Seventh Circuit has observed that a criminal defendant's status as a deportable alien may be grounds for a downward departure under the sentencing guidelines. Specifically, such departures are granted pursuant to § 5K2.0, which grants courts the discretion to depart from the guidelines where aggravating or mitigating circumstances "of a kind, or to a degree, not adequately taken into consideration" by the guidelines exist, U.S.S.G. § 5K2.0(a)(1) (2004). The Supreme Court's decision in *Koon v. United States*, 518 U.S. 81 (1996), expressly recognizes that district courts have the discretion to consider unusual or exceptional circumstances not contemplated in the sentencing guidelines in deciding whether to grant an upward or downward departure. Under current Seventh Circuit law, departures based on a defendant's status as a deportable aliens are not made as a matter of course, but rather a "defendant's status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense." *United States v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001); *United States v. Gallo-Vasquez*, 284 F.3d 780, 784 (7th Cir. 2002).

In his *pro se* motion before this court, Petitioner argued that he was entitled to such a departure because, as a deportable alien, he (1) was not eligible for a number of Bureau of Prisons programs, including a residential drug abuse program and intensive confinement boot camp, that could lead to a reduction in his overall sentence and thus early release, and (2) could be placed in a higher security prison facility. (Defendant's Motion for Downward Departure, Respondent's Ex.

10

4, at 4.) The government opposed Petitioner's motion on the grounds that Petitioner failed to show exceptional circumstances warranting a downward departure. This court agreed with the government that "unusual circumstances need to be presented in order for such a departure to be warranted" and held that no such circumstances were present in Petitioner's case. (Transcript of Sept. 10, 2002 Sentencing Hearing, Respondent's Ex. 2, at 4.)

In order to prevail on his ineffective assistance claim, Petitioner must show that he was prejudiced by trial counsel's failure to bring a motion for downward departure based on his status as a deportable alien; that is, he must show a reasonable probability that, had his counsel moved for a downward departure, this court would have granted it. Here, as noted, Petitioner himself made such a motion, so his burden is to show that had Mr. Galvan presented it, the court's assessment of the arguments would have been different. Petitioner has made no such showing. He cites a number of factors that, he believes, render his circumstances exceptional: namely his ineligibility for participation in home confinement and the possibility of serving his sentence in a higher security facility. Neither of these factors are sufficient to warrant a departure. The Seventh Circuit has expressly held that the ineligibility of a deportable alien to participate in certain Bureau of Prison's programs is not alone sufficient to warrant a downward departure. *Gallo-Vasquez*, 284 F.3d at 784 n.3 (noting that "under such a regime, every illegal alien would qualify for a downward departure"). Indeed, as the Seventh Circuit has noted, the very purpose of these policies suggests that deportable aliens should not be eligible for placement in relaxed security facilities at the end of their sentence:

> The [Bureau of Prison's] end-of-sentence policies like community confinement for a few months are in place to help "reintegrate" certain offenders back into society. That a deportable alien is not eligible for a program designed to "reintegrate" him back into American society does not make his imprisonment under the guidelines "more onerous." In fact, to cut a term of imprisonment – even as here by only 8 or 9 months – for a deportable alien when a citizen doesn't get the same shortened term would be discrimination in reverse.

*United States v. Meza-Urtado*, 351 F.3d 301, 305 (7th Cir. 2003); *see also United States v. Chen*,

No. 00 C 6815, 2000 WL 1831540, *4 (N.D. Ill. Dec. 11, 2000), citing *United States v. Restrepo*, 999 F.2d 640, 644-47 (2d Cir. 1993).

Petitioner also urges that a departure was justified based on the fact that his alien status precludes his placement in a minimum security prison. *See* Bureau of Prisons Security Designation & Custody Classification Manual, Policy Statement 5100.07, ch. 7 at 3, *available at* www.bop.gov (deportable aliens "shall be housed in at least a Low security level institution"). As another court in his district has noted, however, such arguments have little force where the prisoner is not incarcerated in a high security facility. At the time when he filed the current petition, Petitioner was housed in the Eloy Detention Center in Arizona. (§ 2255 Petitioner, at 1.) Presently, he is incarcerated in Cibola County Correctional Institution. *See* www.bop.gov. Both institutions are privately run facilities used "to meet the needs of low security, specialized populations like sentenced criminal aliens," *see* www.bop.gov, and are among the least restrictive in the federal prison system. *See* Bureau of Prisons Security Designation & Custody Classification Manual, Policy Statement 5100.07, ch. 2 at 5, *available at* www.bop.gov (identifying four security levels in BOP system: minimum, low, medium, and high). Such a placement is not "substantially more onerous" than of non-alien prisoners convicted of the same crime as Petitioner, *Guzman*, 236 F.3d at 834, and thus this court would not have granted a downward departure on that basis even if his trial counsel had made such a motion. *See United States v. Vaiseta*, No. 01 CR 922, 2003 WL 22462554, *2 (N.D. Ill. Oct. 30, 2003) (deportable alien not entitled to downward departure based on incarceration in low security facility).

### C.     Failure to Object to Presentence Report

The third basis for Petitioner's ineffective assistance of counsel claim is Mr. Galvan's failure to object to certain matters contained in the pre-sentence report. Unfortunately, Petitioner has not explained what portion of the pre-sentence report Mr. Galvan failed to object to, let alone how his failure to do so constituted ineffective assistance. Although the court will construe a prisoner's *pro*

12

*se* petition liberally, the burden remains on Petitioner to demonstrate he is entitled to the extraordinary writ of habeas corpus. *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997). Having failed to identify "the specific acts or omissions that form the basis for his claim of ineffective assistance," *Moya-Gomez*, 860 F.2d at 763-64, *citing Strickland*, 466 U.S. at 690, Petitioner cannot establish that trial counsel was ineffective.

### A. Failure to Present "Unconsciousness" Defense

Finally, Petitioner claims that his trial counsel was ineffective for failing to "research and present [t]he defense of unconsciousness." (§ 2255 petition, at 2.) The court is unfamiliar with any such defense and Plaintiff himself has again failed to explain the basis for it. He does not suggest that he was unconscious at the time of the drug transaction. In an affidavit submitted to the court, Mr. Galvan states that no such defense was available to Petitioner.[4] (Galvan Affidavit, at 1.) Absent an explanation of the basis for such a defense, the court cannot conclude that Mr. Galvan's decision not to present such a defense fell below an objective standard of reasonableness or prejudiced Petitioner in any way.

### CONCLUSION

For these reasons, the petition for writ of habeas relief is denied.

ENTER:

Dated: May 25, 2005

REBECCA R. PALLMEYER
United States District Judge

---

[4] Mr. Galvan himself does not explain the potential basis behind any such defense in his affidavit. Perhaps Petitioner believes his 76-month sentence is *unconscionable*. Where the sentence imposed reflects a straightforward application of the guidelines, any such argument would fail.